IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| VIVIAN PEIKIN, | : | HON. JEROME B. SIMANDLE |
| Plaintiff, | : | Civil No. 07-5538 (JBS) |
| v. | : | |
| KIMMEL & SILVERMAN, P.C., et al., | : | **OPINION** |
| Defendants. | : | |

APPEARANCES:

Jennifer Sue Grissom, Esq.
Laura C. Mattiacci, Esq.
CONSOLE LAW OFFICES, LLC
1525 Locust Street
9th Floor
Philadelphia, PA 19102
    Attorneys for Plaintiff Vivian Peikin

Jennifer Myers Chalal, Esq.
SPECTOR GADON & ROSEN, P.C.
1635 Market Street
7th Floor
Philadelphia, PA 19103
    Attorney for Defendants Kimmel & Silverman, P.C.; Craig T.
    Kimmel; and Robert M. Silverman

**SIMANDLE**, District Judge:

Plaintiff Vivian Peikin, a former employee of Defendant Kimmel & Sulverman, P.C. ("Kimmel & Silverman"), a Pennsylvania professional corporation, filed this lawsuit against her former employers, alleging that she was harassed and discriminated against on account of her age and gender.  Presently before the Court is the motion of Defendants [Docket Item 7] seeking (1) dismissal or summary judgment as to Plaintiff's New Jersey Law

Against Discrimination ("NJLAD") claims, and (2) transfer of the remainder of Plaintiff's claims to the United States District Court for the Eastern District of Pennsylvania.  For the reasons set forth below, the Court will grant Defendants' motion for summary judgment as to Plaintiff's NJLAD claims, and will transfer this matter to the Eastern District of Pennsylvania.

## I.   BACKGROUND

Plaintiff is a Pennsylvania resident and former employee of Kimmel & Silverman, a Pennsylvania professional corporation. (Compl. ¶ 1.)  Plaintiff was hired as an associate attorney by Kimmel & Silverman in July 1999, and she worked at the firm's office in Ambler, Pennsylvania until October 20, 2006, when she was terminated.[1]  (Id. at ¶ 33; Graham Aff. ¶¶ 8, 17.)  At the time of Plaintiff's termination, she was fifty-eight years old, which made her the oldest female attorney at the firm.  (Compl. ¶¶ 34-35.)

Plaintiff alleges that over the course of her employment at Kimmel & Silverman, she was subjected to repeated acts of harassment and discrimination on account of her age and gender, and that the cumulative effect of these acts created a hostile working environment.  (Id. at ¶ 27.)  The specific discriminatory

_____

[1]  While Kimmel & Silverman maintained two offices in New Jersey during the period of Plaintiff's employment with the firm, Plaintiff worked exclusively out of the firm's Ambler, Pennsylvania office.  (Peikin Aff. ¶ 11.)

2

acts Plaintiff complains of include her allegations that:
Defendants Kimmel and Silverman engaged in sexual relationships
with younger female employees and then gave preferential
treatment to those employees, (id.); Defendants Kimmel and
Silverman excluded her from meetings, slammed doors in her face,
and screamed at her, (id.); Defendants Kimmel and Silverman made
inappropriate sexual jokes in her presence, (id.); Defendants
Kimmel and Silverman relegated female associates in the Ambler,
Pennsylvania office, but not their male counterparts, to
undesirable office space in the basement, (id.); Defendant Kimmel
stuck his hand down the pants of one female employee and sent
sexually inappropriate emails to another female employee, (id. at
¶ 28); Defendant Silverman took Plaintiff to a strip club in New
Orleans and purchased lap dances for female associates at the
club, (id. at ¶ 29); and Defendant Silverman encouraged a male
associate to expose himself during a dinner at a conference in
San Francisco.  (Id.)

    Plaintiff alleges that on September 13, 2006, she received
an "extremely hostile" email from Defendant Kimmel.  (Id. at ¶
30.)  Shortly thereafter, Plaintiff initiated a conversation with
Defendant Silverman about the email in which she expressed
concerns that she was being discriminated against and subjected
to a hostile work environment; Defendant Silverman informed
Plaintiff that she should speak with Mr. Kimmel about her

concerns.  (<u>Id.</u> at ¶ 31.)  Thirty minutes after she spoke with
Defendant Silverman, Defendant Kimmel summoned Plaintiff to his
office, where he "berated Plaintiff for her complaint and
verbally attacked her."  (<u>Id.</u> at ¶ 32.)  Roughly one month later,
on October 20, 2006, Plaintiff was terminated without explanation
and was replaced by a twenty-eight-year-old male attorney.  (<u>Id.</u>
at ¶¶ 33, 36.)

    While none of the discriminatory conduct that Defendants are
alleged to have committed took place in New Jersey, Plaintiff
alleges that she experienced the effects of Defendants' conduct
in New Jersey, on account of the fact that the majority of her
work at Kimmel & Silverman took place in New Jersey.  (Peikin
Aff. ¶ 4.)  According to Plaintiff, she worked four out of five
days each week in New Jersey, (<u>id.</u>), with approximately 90% of
her work centering around New Jersey-based clients and cases.
(<u>Id.</u> at ¶ 5.)

    Plaintiff filed her Complaint in this action on November 16,
2007 [Docket Item 1].  The Complaint alleges that Kimmel &
Silverman discriminated against, harassed, and retaliated against
Plaintiff in violation of Title VII (Count I), the Age
Discrimination in Employment Act (Count II), and the NJLAD (Count
III); and that Defendants Kimmel and Silverman "aided, abetted,
incited, compelled and/or coerced Defendant Law Firm in the
hostile work environment, discrimination and retaliation to which

4

Plaintiff was subjected" in violation of the NJLAD (Count IV).
(Compl. ¶ 65.)  Defendants subsequently filed the motion
presently under consideration, to the merits of which the Court
now turns.

## II.  DISCUSSION

In their motion, Defendants seek two forms of relief.
First, Defendants have moved for dismissal and/or summary
judgment as to Plaintiff's NJLAD claims, arguing that because
Plaintiff was not employed in New Jersey and because none of the
allegedly discriminatory conduct took place in New Jersey, New
Jersey law does not govern Plaintiff's discrimination claims.  In
addition, Defendants have moved to transfer this case to the
Eastern District of Pennsylvania, arguing, first, that venue in
this forum is improper under 42 U.S.C. § 2000e-5(f)(3), and,
alternatively, that the case should be transferred pursuant to 28
U.S.C. § 1404(a).  The Court addresses these matters in turn
below.

### A.    NJLAD Claims

#### 1.    Standard of Review

The Court first addresses the standard of review that
governs its analysis of Defendants' motion.  Defendants have
moved for dismissal pursuant to Fed. R. Civ. P. 12(b)(6) and/or
for summary judgment pursuant to Fed. R. Civ. P. 56.  Because the
parties' motion practice raises matters "beyond the face of the

pleadings," Robinson v. Dalton, 107 F.3d 1018, 1022 (3d Cir. 1997), the Court will treat Defendants' submission as a motion for summary judgment.

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. Id. In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Liberty Lobby, 477 U.S. at 255).

    2.  Analysis

The parties' submissions do not raise any factual disputes as to the viability of Plaintiff's NJLAD claims, and the Court's determination focuses exclusively on a question of law: do New Jersey's antidiscrimination laws protect a Pennsylvania resident employed by a Pennsylvania professional corporation from

discriminatory acts allegedly undertaken in Pennsylvania if, over the course of her employment, the employee conducted business in New Jersey?  For the following reasons, the Court agrees with Defendants that this question must be answered in the negative.

As this Court has previously recognized, "New Jersey courts have consistently applied the law of the state of employment to claims of workplace discrimination, and therefore only apply the NJLAD if the claimant was employed in New Jersey."  Weinberg v. Interep Corp., No. 05-5458, 2006 WL 1096908, at *6 (D.N.J. Apr. 26, 2006) (citing cases) (emphasis added).  This restriction on the extraterritorial application of the NJLAD is rooted in the well-settled understanding that "New Jersey law regulates conduct in New Jersey, not outside the state."  Buccilli v. Timby, Brown & Timby, 283 N.J. Super. 6, 10 (App. Div. 1995) (citing D'Agostino v. Johnson & Johnson, Inc., 133 N.J. 516, 539 (1993)).  These principles have been applied repeatedly in cases brought by New Jersey residents against out-of-state employers, with courts consistently holding that the "claim of a New Jersey resident for her allegedly wrongful dismissal from out-of-state employment is governed by the law of the state in which she was employed."  Id.; see also, e.g., Kelman v. Foot Locker, No. 05-2069 2006 WL 3333506, at *6 (D.N.J. Nov. 16, 2006); Weinberg, 2006 WL 1096908, at *6; Satz v. Taipina, No. 01-5921, 2003 WL 22207205, at *16 (D.N.J. Apr. 15, 2003).

Plaintiff's claims differ from those addressed in <u>Buccilli</u>, <u>Kelman</u>, and <u>Satz</u>, because, unlike the plaintiffs in those cases, Ms. Peikin has never been a New Jersey resident.  (Compl. ¶ 1.) Instead, Plaintiff seeks to invoke the protections of the NJLAD under the theory that, while she was employed in Pennsylvania by a Pennsylvania professional corporation and based out of that corporation's Pennsylvania office, her legal practice frequently took her to New Jersey.  (Peikin Aff. ¶¶ 4-5.)  This Court rejected a similar argument in <u>Weinberg</u>, noting in that case that the plaintiff had "cite[d] no authority suggesting that the amount of business a claimant conducts in the state is a factor in considering whether a claim can be asserted under the NJLAD."[2] <u>Weinberg</u>, 2006 WL 1096908, at *6.

Ms. Peikin likewise has failed to identify any such authority, and the Court is not persuaded that the application of the NJLAD to discriminatory conduct allegedly committed in Pennsylvania by Pennsylvania-based employers against a Pennsylvania-based employee is reasonable.  Plaintiff is a

---

[2] In <u>Weinberg</u>, the Court further noted that "even if this factor was germane, in this case, the sales generated by Plaintiff in New Jersey were not substantial." <u>Weinberg</u>, 2006 WL 1096908, at *6.  While Ms. Peikin's business activities in New Jersey appear to have been more substantial than were the plaintiff's in <u>Weinberg</u>, nothing in that case suggests that an out-of-state employee who happened to conduct more substantial business in New Jersey would fall within the ambit of the NJLAD's protections exclusively on account of the amount of such business.  Indeed, the Court's discussion of this issue in <u>Weinberg</u> is directly to the contrary.  <u>Id.</u>

Pennsylvania resident who, notwithstanding the fact that she
worked on cases for New Jersey clients and frequently traveled to
New Jersey, was based out of Kimmel & Silverman's Ambler,
Pennsylvania office throughout her seven-year tenure at the
firm.[3]  (Compl. ¶ 1; Graham Aff. ¶¶ 8, 17.)  Significantly, all
of the discriminatory acts allegedly perpetrated by Defendants,
including the termination of Plaintiff, took place at the Ambler,
Pennsylvania office, save for one incident that took place in San
Francisco and another incident that occurred in New Orleans.
(Compl. ¶¶ 27-36.)  After she was terminated, Plaintiff received
unemployment benefits from the Pennsylvania Department of Labor
and Industry Unemployment Compensation Division, (Graham Aff. ¶
13), and filed a Charge of Discrimination with the Pennsylvania
Human Relations Commission.  (Compl. Ex. 1.)  In short, the
undisputed evidence in the record indicates that Plaintiff's
"state of employment" was Pennsylvania, and that all of the
allegedly discriminatory conduct at issue in this case took place
outside of New Jersey.  Weinberg, 2006 WL 1096908, at *6-7

---

    [3]  That Kimmel & Silverman maintains an office in New
Jersey, at which Plaintiff never worked and which has no
connection to any of the allegedly discriminatory actions in this
case, does not bring the Pennsylvania-based acts of alleged
discrimination within the ambit of the NJLAD.  See Satz, 2003 WL
22207205, at *17 (citing Brunner v. AlliedSignal, Inc., 198
F.R.D. 612, 613-14 (D.N.J. 2001)).  Such New Jersey contacts
would, of course, be relevant to an issue of personal
jurisdiction in New Jersey over the Pennsylvania professional
corporation, which is not raised in this case.

("looking to the state of employment ensures that the law in the
jurisdiction with the strongest interest in the outcome of the
litigation controls").

In light of the fact that "New Jersey law regulates conduct
in New Jersey, not outside the state," <u>Buccilli</u>, 283 N.J. Super.
at 10 (citation omitted), the Court agrees with Defendants that
the NJLAD does not apply to Plaintiff's discrimination claims,
and will grant Defendants' motion for summary judgment as to
those claims.

**B.   Motion to Transfer Venue**

Defendants have moved to transfer the remainder of this
litigation to the Eastern District of Pennsylvania, arguing,
first, that venue in this forum is improper under 42 U.S.C. §
2000e-5(f)(3), and, second, that even if venue is proper, that
the case should be transferred pursuant to 28 U.S.C. § 1404(a).
As the following discussion makes clear, the Court finds that
while venue in this District is not improper under §
2000e-5(f)(3), the case should be transferred to the Eastern
District of Pennsylvania under § 1404(a).

1.   <u>Venue Under 42 U.S.C. § 2000e-5(f)(3)</u>

Initially, the Court finds that this District is not an
improper venue for Plaintiff's claims.  Venue for a Title VII
claim is properly laid

in any judicial district in the State in which the
unlawful employment practice is alleged to have been

10

> committed, in the judicial district in which the
> employment records relevant to such practice are
> maintained and administered, or in the judicial district
> in which the aggrieved person would have worked but for
> the alleged unlawful employment practice . . .

§ 2000e-5(f)(3).[4]  While the Court found, in addressing the

viability of Plaintiff's NJLAD claims, supra, that Pennsylvania

was the state in which Plaintiff was employed and the state where

the allegedly unlawful employment practices were committed, under

§ 2000e-5(f)(3), venue for Title VII claims is proper not only in

the state of employment, but also "in the judicial district in

which the aggrieved person would have worked but for the alleged

unlawful employment practice."  Id.; cf. Richardson v. Alabama

State Bd. of Educ., 935 F.2d 1240, 1248 (11th Cir. 1991) (noting

that "this broad provision for alternative forums was necessary

to support the desire of Congress to afford citizens full and

easy redress of civil rights grievances").  Although none of the

allegedly discriminatory conduct at issue in this case took place

in New Jersey, Plaintiff's affidavit is sufficient to indicate

that she "would have worked [in New Jersey] but for the alleged

unlawful employment practice."  § 2000e-5(f)(3).  The Court thus

finds that this District meets § 2000e-5(f)(3)'s venue

requirements for Plaintiff's Title VII claim, and that venue in

---

[4]  It is well-settled that "[t]his venue requirement is
mandatory for Title VII . . . claims, and thus, other more
general venue provisions do not apply to such claims."  Colon v.
Pitney Bowes Corp., No. 06-5016, 2007 WL 496875, at *2 (D.N.J.
Feb. 8, 2007).

11

this matter was not improperly laid in this District.

      2.  <u>Motion to Transfer</u>

For the reasons explained below, however, the Court agrees with Defendants that this case should be transferred to the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The Court of Appeals has explained that

> [i]n ruling on § 1404(a) motions, courts have not limited their consideration to the three enumerated factors in § 1404(a) (convenience of parties, convenience of witnesses, or interests of justice), and, indeed, commentators have called on the courts to consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum.

<u>Jumara v. State Farm Ins. Co.</u>, 55 F.3d 873, 879 (3d Cir. 1995) (internal quotations and citations omitted). Courts ruling on § 1404(a) motions have accordingly taken into account a wide range of public and private interests in determining whether a transfer is appropriate.

Among the private interests that the <u>Jumara</u> court identified as being significant to the § 1404(a) analysis are:

> plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial

condition; the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

Id. at 879 (citations omitted).  Among the public interests to be considered are:

the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

Id. at 879-80 (citations omitted).  It is well-settled that the burden on a § 1404(a) motion must be borne by the party seeking to transfer the case, and that "the motion must not be lightly granted."  Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 3d § 3848.

Of all of the private and public interest factors identified in Jumara, the sole consideration that weighs against transfer in this case is Plaintiff's forum preference.[5]  While mindful of the principle that "the plaintiff's choice of venue should not be

_____

    [5]  As a threshold consideration, the Court notes that the Eastern District of Pennsylvania is a "district . . . where [this action] might have been brought."  § 1404(a).  The courts of that District would have personal jurisdiction over the parties to this action, all of whom are Pennsylvania residents.  (Compl. ¶¶ 1, 5-7.)  Venue in that District would lie under § 2000e-5(f)(3), since Pennsylvania is "the State in which the unlawful employment practice [at issue here] is alleged to have been committed."  § 2000e-5(f)(3).

lightly disturbed," Jumara, 55 F.3d at 879 (citation omitted), the Court also recognizes that the significance of this "factor diminishes where the plaintiff chooses a foreign forum rather than his or her home forum.  The plaintiff's interest decreases even further where the central facts of a lawsuit occur outside the chosen forum."  In re Consolidated Parlodel Litigation, 22 F. Supp. 2d 320, 323-24 (D.N.J. 1998) (internal quotations and citations omitted).  In this case, New Jersey is neither Plaintiff's home forum, nor the forum in which the central facts of this lawsuit occurred.  As the Court explained in Section II.A.2, supra, nearly every act of discrimination Plaintiff complains of occurred in Pennsylvania, and none was perpetrated in New Jersey.  Accordingly, the Court finds that while Plaintiff's preference to litigate this case in New Jersey weighs against transfer, "that weight is slight."  Id. at 324.

The remaining private and public interest considerations identified in Jumara either weigh in favor of transfer or are not implicated by the facts of this case.  Most critical among these factors are considerations of where Plaintiff's "claim[s] arose" and "the local interest in deciding local controversies at home." Jumara, 55 F.3d at 879-80 (citations omitted).  As the Court has repeatedly noted, supra, this lawsuit centers around discriminatory conduct allegedly perpetrated upon a Pennsylvania resident in Pennsylvania by Pennsylvania-based employers.  Proof

of Plaintiff's claims will turn on evidence demonstrating whether Plaintiff was harassed in Pennsylvania, whether Defendants made inappropriate comments in Pennsylvania, the circumstances surrounding Plaintiff's termination in Pennsylvania, and the characteristics of the employee who was hired to replace Plaintiff in the Ambler, Pennsylvania office.  Plaintiff's claims not only arose in Pennsylvania, but virtually all evidence that might conceivably relate to those claims is tied to Pennsylvania, not New Jersey.

Moreover, as numerous courts in this Circuit have recognized, controversies relating to employment discrimination claims are precisely the sort of disputes to which the local community interests referenced in <u>Jumara</u> attach.  <u>See</u>, <u>e.g.</u>, <u>Rodriquez v. Senoral Corp., Inc.</u>, No. 06-2874, 2006 WL 3454861, at *5 (D.N.J. Nov. 27, 2006); <u>Lamusta v. Lawson Mardon Wheaton, Inc.</u>, No. 99-3931, 2000 WL 274013, at *3 (E.D. Pa. Mar. 13, 2000).  In <u>Lamusta</u>, in which the court transferred from the Eastern District of Pennsylvania to this District a case containing claims alleging discriminatory acts conducted in New Jersey, the court explained:

> There is no relationship of the community in which this court sits and from which its jurors are drawn to the occurrences giving rise to this litigation.  That relationship is strong in the District of New Jersey. The defendant is a corporate citizen of New Jersey.  If defendant is culpable, it is for decisions made and a course of conduct undertaken in New Jersey.  Resolution of the employment discrimination and sexual harassment

> claims particularly would be most meaningful and salutary in the community in which these unlawful acts were allegedly perpetrated, in which the alleged perpetrator maintains a workforce and in which the alleged victim was employed and resides.

2000 WL 274013, at *3; see also Rodriguez, 2006 WL 3454861, at *5.  The Court finds the Lamusta court's reasoning on this point persuasive, and agrees with Defendants that Pennsylvania has a greater interest in disputes between its citizens over alleged discrimination than does New Jersey.

The public policies of the fora, to the extent that they are implicated by this case, likewise weigh in favor of transfer. Jumara, 55 F.3d at 879 (citation omitted).  As the Court has held, supra, New Jersey's antidiscrimination laws do not reach Plaintiff's allegations that she was harassed and discriminated against in Pennsylvania, and so New Jersey's public policies are not at issue in this case.  Should Plaintiff seek to amend her Complaint to assert claims based upon Pennsylvania's workplace discrimination laws, however, then Pennsylvania's public policies could conceivably bear upon the disposition of Plaintiff's claims.  To the extent either fora's public policies are implicated by this lawsuit, then, this factor likewise weighs in favor of transfer.

The remaining § 1404(a) considerations are not implicated in this case.  As was the case in Lamusta, "[t]he notion of inconvenience literally is not implicated when the competing fora

16

are Philadelphia and Camden." Lamusta, 2000 WL 274013, at *3. Neither Plaintiff nor Defendants have suggested that issues of trial efficiency or the enforceability of the judgment tips in either party's favor.

As was true in Lumasta, then,

> [t]he choice of forum of either party in this case can be accommodated with virtually no inconvenience to the other or to any prospective witness. The ultimate question is whether the lack of any connection between plaintiff's claims and this district and the substantially greater interest of [Pennsylvania] in the adjudication of this controversy sufficiently outweigh plaintiff's choice of forum. Giving diminished but still appreciable weight to plaintiff's preference, the court concludes that the answer is yes.

Id. at *4. This Court once again finds Lumasta's reasoning persuasive. The center of gravity in this case – where all parties reside, where Plaintiff was employed, where the discriminatory conduct charged in the Complaint allegedly took place, and where the local interests implicated by the parties' dispute are based – is inarguably in the Eastern District of Pennsylvania. When these considerations are balanced against the lone factor disfavoring transfer – Plaintiff's preference to litigate this dispute outside her home forum in a separate District from where the conflict arose – the appropriateness of transferring this case is apparent. The Court will accordingly grant Defendants' motion to transfer this matter to the Eastern District of Pennsylvania.

17

**III. CONCLUSION**

For the reasons explained above, the Court will grant
Defendants' motion for summary judgment as to Plaintiff's NJLAD
claims, and will transfer the remainder of this action to the
Eastern District of Pennsylvania.  The accompanying Order will be
entered.


**August 21, 2008**                          **_s/ Jerome B. Simandle_**
Date                                    JEROME B. SIMANDLE
                                        United States District Judge